# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| FELICIA MURPHY | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-00215 |
| | § | |
| ABA RANCH, LLC, and STEPHEN REED, Individually | § § | Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Felicia Murphy's Motion for Default Judgment (Dkt. #53). Having considered the relevant pleadings, the Court finds the motion is granted.

This is case involving claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. (Dkt. #1). Defendants operate an autism therapy center in Argyle, Texas. Plaintiff was employed by Defendants as a behavioral technician. Defendants employed Plaintiff from October 19, 2015, to February 20, 2017 (Dkt. #53 at pp. 2–3). Plaintiff was paid $15 per hour from October 19, 2015, through December 21, 2015 (two months) (Dkt. #53 at p. 3). Plaintiff was paid $20 per hour from December 22, 2015, through February 20, 2017. (Dkt. #53 at p. 3). Plaintiff he also worked one Saturday a month for approximately five (5) hours per Saturday (Dkt. #53 at p. 3). Although Plaintiff alleges she worked beyond 40 hours a week, she claims that she was never given an overtime rate of one-time-and-a-half for each hour over 40 hours a week and was not paid for any compensation for the Saturday shifts (Dkt. #53 at p. 3).

On March 29, 2017, Plaintiff Felicia Murphy filed a complaint with this Court under the FLSA (Dkt. #1). On November 7, 2017, counsel for Defendants ABA Ranch and Stephen Reed filed an unopposed Motion to Withdraw from this matter (Dkt. #15) because Defendants could no longer pay counsel's fees. On November 21, 2017, the Court issued an Order granting defense counsel's Motion to Withdraw (Dkt. #16). In its Order, Court also ruled that ABA Ranch, LLC,

"shall have thirty (30) days to obtain counsel and for counsel to make an appearance in this case" (Dkt. #16).[1]

On April 24, 2018, the Court ordered ABA Ranch, to show cause in writing, no later than May 4, 2018, why the Court should not impose case-dispositive sanctions be imposed against it (Dkt. #24). The Court warned that if ABA Ranch failed to respond to its order, the Court would strike the answer and enter default judgment against ABA Ranch. ABA Ranch failed to respond. On May 9, 2018, the Court, therefore, ordered that that ABA Ranch's answer be stricken and advised that "[i]f Plaintiff wants to pursue default, she shall request the Clerk's Entry of Default against Defendant ABA Ranch, LLC, or be subject to dismissal for want of prosecution." (Dkt. #28).

On May 24, 2018, Defendant Stephen Reed filed a Suggestion of Bankruptcy, indicating he filed a voluntary petition for Chapter 7 Bankruptcy (Dkt. #41). The Court subsequently stayed all claims asserted against him (Dkt. #43).

On May 25, 2018, the Clerk of the Court entered a default against ABA Ranch (Dkt. #42). On July 24, 2018, Plaintiff submitted this motion for Default Judgment (Dkt. #53). ABA Ranch did not file a response.

**LEGAL STANDARD**

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. FED. R. CIV. P. 55. The Fifth Circuit requires a three-step process for securing a default judgment. *New York Life Ins. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required

---

[1] ABA Ranch, LLC, was provided notice of this Order when counsel sent them via email to Stephen Reed (*See* Dkt. #23).

by Rule 12 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Next, an entry of default may be entered by the clerk when the default is established by affidavit or otherwise. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Third, a plaintiff may then apply to the clerk or the court for a default judgment. FED. R. CIV. P. 55(b); *New York Life Ins.*, 84 F.3d at 141.

Rule 55(b)(2) grants a district court wide latitude and the entry of default judgment is left to the sound discretion of the trial court. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A defendant, by his default, admits a plaintiff's well pleaded allegations of fact. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). However, a defendant's default does not concede the truth of allegations of the complaint concerning damages. *Jackson v. FIE Corp.*, 302 F.3d 151, 524–25 (5th Cir. 2002).

## ANALYSIS

As a preliminary matter, the Court finds that this case is best served by severing Defendants into two separate causes of action. Rule 21 of the Federal Rules of Civil Procedure establishes that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party," and "[t]he court may sever any claim against a party." FED. R. CIV. P. 21. Under Rule 21, a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995). Trial courts have broad discretion to sever issues to be tried before it. *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). But courts will refuse to sever claims if "the court believes that it only will result in delay, inconvenience, or added expense." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014).

Severance under Rule 21 creates "two separate actions or suits where previously there was but one." *U.S. v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983). When a single claim is severed, it proceeds as a "discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting actions." *Id.* The Court will therefore sever the claims against Defendant Reed and continue to stay the separate cause of action against him. The claims and eventual default judgment against ABA Ranch will proceed.

In determining whether to enter a default judgment against a defendant, courts in the Fifth Circuit utilize a three-part analysis: 1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive. *Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir. 1998); *Nishimatsu,* 515 F.2d at 1206; *U.S. v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

The Court must first determine whether a default judgment is procedurally warranted. After reviewing Plaintiff's Motion, the Court determines that default judgment is procedurally warranted because the grounds for default are established and neither substantial prejudice nor good faith mistake are present. The Fifth Circuit in *Lindsey* recognized six factors relevant to the inquiry of whether a default judgment is procedurally warranted:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. First, no material issues of fact are present. As noted in *Nishimatsu*, when a defendant defaults, he admits to the plaintiff's well-pleaded allegations of fact. 515 F.2d at 1206. Therefore, no material facts are in dispute. *See Lindsey*, 161 F.3d at 893. Second, Plaintiff

has been substantially prejudiced because ABA Ranch has been nonresponsive for over a year and this failure to respond "threatens to bring the adversary process to a halt, effectively prejudicing plaintiff's interest." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default are clearly established because ABA Ranch has been unresponsive, and if the failure to respond is "plainly willful, as reflected by [the parties'] failure to respond either to the summons and complaint, the entry of default, or the motion for default" then default judgment is appropriate. *Holladay v. OTA Training, LLC*, 3:14-CV-0519-B, 2015 WL 5916440, at *4 (N.D. Tex. Oct. 8, 2015) (quoting *Cumins Ins. Soc'y, Inc. v. Billups*, 10-1478, 2010 WL 4384228, at *2 (D.D.C Nov. 4, 2010)). Fourth, nothing in the record provides evidence that ABA Ranch's lack of response is due to good faith mistake or excusable neglect. *See Lindsey*, 161 F.3d at 893. Fifth, the harshness of the default judgment is not great because Plaintiff is only seeking "the relief to which she is entitled under the FLSA." *See Holladay*, 2015 WL 5916440, at *5. Lastly, no facts lead this Court to believe "good cause" is present to set aside the default. *See Lindsey*, 161 F.3d at 893. Therefore, the Court determines that default judgment is procedurally warranted.

After establishing that default judgment is procedurally warranted, the Court must determine if a sufficient basis for the pleadings is present. Although ABA Ranch is deemed to have admitted the allegations set forth in a Plaintiff's complaint in light of an entry of default, the Court must review the pleadings to determine whether the complaint presents a sufficient basis for relief. *Nishimatsu*, 515 F.2d at 1206. The Fifth Circuit looks to Rule 8 case law for guidance in determining whether a complaint is sufficient. *Wooten v. McDonald Transit Assocs., Inc.,* 788 F.3d 490, 498 (5th Cir. 2015). Rule 8 (a)(2) requires a pleading to contain "a short and plain statement showing pleader is entitled to relief." *Id.* The purpose of this requirement is to give a

5

defendant fair notice of what the claim is and the grounds upon which it rests. *Id* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. Detailed factual allegations are not required, but the pleading must be more than an "unadorned, the defendant-unlawfully-harmed me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court finds a sufficient basis for the pleadings because Plaintiff has adequately alleged that she was an employee engaged in commerce or the production of goods for commerce and that ABA Ranch was her employers within the meaning of the FLSA. An employee is covered by the FLSA's overtime provisions if she is "employed by an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1) (2017). The FLSA defines an enterprise engaged in commerce as a company that: 1) has two or more employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and 2) has gross annual sales of at least $500,000. 29 U.S.C. 203(s)(1) (2017).

Additionally, the FLSA defines an "employer" broadly to include any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d) (2017). The Fifth Circuit has adopted an "economic reality" test to evaluate whether an employee/employer relationship exists. *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). Under this test, the Court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment

records." *Id* at 355. Each individual or entity alleged to be an employer must satisfy the four-part test, however, not all elements need be present. *Id* at 355, 357.

Plaintiff has pleaded facts to establish that she was an employee of an enterprise engaged in commerce or in the production of goods for commerce with an annual gross volume of sales or business done in excess of $500,000 as required by the FLSA (Dkt. #1 at ¶¶ 4.2–4.6). As an enterprise, ABA Ranch had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person (Dkt. #1 at ¶ 4.3). Plaintiff expressly pleaded that Defendants had an annual gross volume of sales made or business done in excess of $500,000 (Dkt. #1 at ¶ 4.2). Furthermore, Plaintiff alleged that ABA Ranch controlled and supervised the work performed by her at all times and had the power to establish company pay practices, to modify employment conditions, and to hire and fire employees (Dkt. #1 at ¶¶ 5.3, 5.4). Due to ABA Ranch's lack of answer or response, Plaintiff's allegations are held as true; consequently, the Court finds a sufficient basis for default judgment in the Plaintiff's pleadings because the Plaintiff adequately pleaded she was an employee and ABA Ranch was her employers under the requirements of the FLSA. *See Nishimatsu,* 515 F.2d at 1206.

Although the Court takes the pleadings of a plaintiff as true when there is an entry of default, this does not include damages and a party entitled to judgment by default is required to prove the appropriate amount of damages. *Jackson*, 302 F.3d at 524-25; *Oberstar v. F.D.I.C.*, 987 F.2d 494, n.9 (8th Cir. 1993) (citing Fed. R. Civ. P. 55(b)(2)). If the Court deems proper, parties may prove damages by written submission and without an evidentiary hearing. FED. R. CIV. P. 55(b)(2). An evidentiary hearing is not required if the Court can mathematically calculate damages by reference to the pleadings and supporting documents. *James*, 6 F.3d at 310.

Plaintiff requests unpaid minimum wages, overtime pay, liquidated damages, and attorneys' costs and fees. Under the FLSA, employers must pay employees $7.25 an hour as minimum wage. 29 U.S.C. § 206 (2017). Furthermore, employers are required to pay employees one-and-one-half times their regular rate of pay for all time worked in excess of 40 hours in a workweek. 29 U.S.C. § 207 (2017). An employer's violation of the FLSA is determined based on the pay and hours worked for each workweek and whether a wage payment meets a minimum requirement is calculated by actual compensation received for each workweek divided by the total number of hours worked in that same period. 29 C.F.R. § 778.104 (2017); *Overnight Motor Transp. Co. v. Misell*, 316 U.S. 572, 580 (1942).

Some employees are not eligible for overtime. Section 213 provides that the overtime requirements of §§ 206–207 "shall not apply with respect to any employee employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. § 213(a)(1). An employee qualifies for the exemption if: (1) she is paid a salary of not less than $455 per week; (2) she has management as her primary duty; (3) she regularly supervises two or more employees; and (4) she has "the authority to hire or fire other employees or [be someone] whose suggestions and recommendations as to hiring, firing, advancements, [or] promotion . . . are given particular weight." 29 C.F.R. § 541.100(a).

The regulations define "management" to include activities such as interviewing, selecting, training, and disciplining employees; setting pay rates and hours of work; directing and apportioning employees' work; handling employee grievances; planning and controlling the budget and inventory; ensuring safety of employees or the property; and monitoring legal compliance measures. *See* 29 C.F.R. § 541.102. ABA Ranch hired Plaintiff as a "behavioral technician" and her duties included, "provid[ing] therapy to autistic children, including one to one

therapy, as well as implementing behavior intervention plans that were put in place by a board-certified behavior analyst." (Dkt. #1 at ¶ 5.1). The Court finds Plaintiff's duties do not fall within the overtime exemption—with the exception of the first four weeks—throughout her employment with ABA Ranch. Plaintiff does not meet the salary test, did not managed the therapy center as her primary duty, did not supervised the staff, and had no authority to hire and fire employees. The overtime exemption does not apply to Plaintiff.

Additionally, the Supreme Court has held that it is the employer's legal obligation to maintain complete pay records and where the employer has failed to do so, deference should be given to the employee's reasonable estimate of hours worked and wages paid. *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687–88 (1946). However, a plaintiff cannot simply give a total damages amount without any supporting documentation. *Holladay*, 2015 WL 5916440, at *6 (ruling that no time sheets, pay stubs, work logs, or other evidence to substantiate the length of her employment, hourly rate or hours she worked was insufficient to support a claim for damages). Rather, as the Court in *Gibbs* held, a plaintiff providing a detailed affidavit listing dates and hours worked would support an overtime claim. *Gibbs v. Parr Mgmt., LLC,* 3:12-CV-4474-L, 2013 WL 2355048, at *1 (N.D. Tex. May 29, 2013).

Here, Plaintiff has provided documentation of hours worked for each workweek during her employment (Dkt. #53, Exhibit A). Plaintiff would work from approximately 8:00 a.m. to 6:15 p.m. Monday through Friday. This equates to 10 hours and 15 minutes per day, or 10.25 hours per day, which is 51.25 hours Monday through Friday. Plaintiff worked approximately five (5) hours per Saturday.

Plaintiff earned $15 per hour from October 19, 2015, through December 21, 2015 (9 weeks) and worked two (2) Saturday shifts (Dkt. #53 at p. 3). Plaintiff earned $20 per hour from

December 22, 2015, through February 20, 2017 (61 weeks) and worked fourteen (14) Saturday shifts (Dkt. #53 at p. 4).

From October 19, 2015, through December 21, 2015 (9 weeks), Monday through Friday, Plaintiff earned $15 per hour for each of the 51.25 hours worked. (Dkt. #53 at p. 3). Plaintiff is owed the half-time of time and one-half. Thus, the Court divides the regular rate of $15 per hour by two to determine the half-time rate. The Court then multiplies the half-time rate ($7.50) by the number of overtime hours worked each week (11.25) to find that Plaintiff is owed $84.375 of overtime per week. As Plaintiff worked 9 weeks, the weekly overtime amount ($84.375) is multiplied by the number of weeks worked (9) to find that for October 19, 2015, through December 21, 2015, Monday through Friday, ABA Ranch owes Plaintiff $759.38 in unpaid overtime.

Plaintiff he also worked two (2) Saturday shifts for approximately five (5) hours per Saturday and earned $15 per hour (Dkt. #53 at p. 3). Plaintiff is entitled to her regular compensation for these shifts. The Court multiplies the regular rate ($15) by the amount of hours worked (10) to find Plaintiff is owed $150. In addition to her regular compensation, Plaintiff is owed the half-time of time and one-half. Thus, the Court divides the regular rate of $15 per hour by two to determine the half-time rate. The Court then multiplies the half-time rate ($7.50) by the number of overtime hours worked (10) to find that Plaintiff is owed $75 of overtime for those two Saturdays. For October 19, 2015, through December 21, 2015 (9 weeks), Monday through Friday, and two Saturdays, ABA Ranch owes Plaintiff $834.38 ($759.38 + $75) in unpaid overtime and $150 in regular compensation for a total of $984.38.

From December 22, 2015, through February 20, 2017 (61 weeks), Plaintiff earned $20 per hour for each of the 51.25 hours worked (Dkt. #53 at p. 4). Plaintiff is owed the half-time of time and one-half. Thus, the Court divides the regular rate of $20 per hour by two to determine the

half-time rate. The Court then multiplies the half-time rate ($10) by the number of overtime hours worked each week (11.25) to find that Plaintiff is owed $112.50 of overtime per week. As Plaintiff worked 61 weeks, the weekly overtime amount ($112.50) is multiplied by the number of weeks worked (61) to find that for December 22, 2015, through February 20, 2017, Monday through Friday, ABA Ranch owes Plaintiff $6,862.50 in unpaid overtime.

Plaintiff he also worked fourteen (14) Saturday shifts for approximately five (5) hours per Saturday, for a total of seventy (70) hours (Dkt. #53 at p. 4). Plaintiff earned $20 per hour and is entitled to her regular compensation for these shifts. The Court multiplies the regular rate ($20) by the amount of hours worked (70) to find Plaintiff is owed $1,400. In addition to her regular compensation, Plaintiff is owed the half-time of time and one-half. Thus, the Court divides the regular rate of $20 per hour by two to determine the half-time rate. The Court then multiplies the half-time rate ($10) by the number of overtime hours worked (70) to find that Plaintiff is owed $700 of overtime for those fourteen Saturdays. For December 22, 2015, through February 20, 2017 (61 weeks), Monday through Friday, and fourteen Saturdays, ABA Ranch owes Plaintiff $7,562.50 ($6,862.50 + $700) in unpaid overtime and $1,400 in regular compensation for a total of $8,962.50. The grand total of unpaid wages, including overtime, is $9,946.88

Liquidated damages are recoverable under the FLSA for an amount equal to the unpaid minimum wages and overtime compensation. 29 U.S.C. § 216(b) (2017). Although liquidated damages are not punitive but rather intended to compensate employees because they were denied the use of funds they were legally entitled. 29 C.F.R. § 790.22(a) n. 137– (b) (2017). A defendant can assert an affirmative defense of good faith; however, if a defendant fails to show a good faith defense, the award of liquidated damages is mandatory. *McConnell v. Thomson Newspapers, Inc.*, 802 F. Supp. 1484, 1506 (E.D. Tex. 1992) (citing *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1299

(3rd Cir. 1991)). Therefore, because ABA Ranch has failed to plead and prove good faith, Plaintiff is entitled to liquidated damages in the amount of her unpaid regular and overtime wages amounting to $9,946.88.

Attorneys' fees and costs are recoverable under the FLSA. 29 U.S.C. § 216(b) (2017). These costs and fees are not limited to profit-making attorneys in private practice, but rather extend to salaried attorneys of nonprofit legal aid organizations claiming a reasonable fee based on the market value of their services. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Plaintiff's requested lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate that is the market rate in the community for this work. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The Court must determine whether the requested amount is reasonable. *Gibbs,* 2013 WL 2355048, at *3. The computation of a reasonable attorneys' fee award is a two-step process. *Rutherford v. Harris Cty.*, 197 F.3d 173, 192 (5th Cir. 1999) (citation omitted).

The Court first calculates the "lodestar" by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant legal community is the community where the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

12

The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light Co. v. KellStrom*, 50 F.3d 319, 324 (5th Cir. 1995); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably expended. *Id.* There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

After calculating the lodestar, the Court then considers whether the circumstances of the particular case warrant an upward or downward lodestar adjustment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). In making any lodestar adjustment, the Court looks to twelve *Johnson* factors. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The *Johnson* factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Johnson,* 488 F.2d at 717–19).

After considering the twelve *Johnson* factors, the court may adjust the lodestar upward or downward. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). "If the plaintiff obtained limited success, the hours reasonably spent on the case times the reasonable hourly rate may be excessive." *Verginia McC v. Corrigan-Camden Indep. Sch. Dist.*, 909 F. Supp. 1023, 1032 (E.D. Tex. 1995). "'[T]he most critical factor' in determining the reasonableness of [an attorneys'

fee award] . . . 'is the degree of success obtained.'" *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491 n.31 (5th Cir. 2001) (quoting *Farrar v. Hobby*, 506 U.S. 103, 113 (1992)); *see also Migis*, 135 F.3d at 1047. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Verginia McC*, 909 F. Supp. at 1032 (quoting *Hensley,* 461 U.S. at 436). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted).

The United States Supreme Court has barred any use of the sixth factor as a basis for enhancement of attorneys' fees. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (citing *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992)). In addition, three of the *Johnson* factors—complexity of the issues, results obtained, and preclusion of other employment—are fully reflected and subsumed in the lodestar amount. *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). "[T]he court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (citation omitted).

The lodestar is presumptively reasonable and should be modified only in exceptional cases. *Watkins*, 7 F.3d at 457. The fee-seeker must submit adequate documentation of the hours reasonably expended and of the attorneys' qualifications and skill, while the party seeking reduction of the lodestar must show that a reduction is warranted. *Hensley*, 461 U.S. at 433; *La. Power & Light Co.*, 50 F.3d at 329.

Here, Plaintiff asks the Court to award it $7,337.50 in attorneys' fees and $668.30 in non-taxable costs and expenses for litigating this case. In support of its attorneys' fee request, Plaintiff

provides the affidavit of its lead counsel, Mr. Douglas Welmaker (Dkt. #53, Exhibit 2). However, Mr. Welmaker's affidavit does not give the Court enough information to determine the reasonableness of Plaintiff's fair estimate of attorneys' fees. Particularly, Plaintiff has not provided the Court with records of time spent on each task. *Watkins v. Fordice*, 7 F.3d at 457. Without this information, the Court cannot calculate the lodestar. Before granting attorneys' fees for a specific amount, the Court orders Plaintiff to submit documentation, that indicates the hours spent on each individual task. *See* FED. R. CIV. P. 54(d). The Court does find Plaintiff is entitled to its costs or expenses in the amount of $668.30

Finally, Plaintiff requests that post-judgment interest be included in the Court's final judgment (Dkt. #1 at p. 7). Interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a) (2017). The Fifth Circuit has ruled that such post-judgment interest is permitted for damages awarded under the FLSA. *Reeves v. Int'l Tel. & Tel. Corp.,* 705 F.2d 750, 751-52 (5th Cir. 1983). Furthermore, ABA Ranch raises no objections at this point, therefore it is proper to award post-judgment interest. *See Olibas*, 104 F. Supp. at 813 (ruling that defendants had not objected to the post-judgment interest request and found no reason to question the matter further).

## CONCLUSION

The Court hereby **SEVERS** the claims against Stephen Reed and ABA Ranch, LLC into a separate cause of action. The separate cause of action against Stephen Reed shall continue to be **STAYED**, pending further Order of the Court. *See GATX Aircraft Co. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985). The Court directs the Clerk of this Court to assign a separate case number for Plaintiff's claims against Defendant Stephen Reed. No filing fee is required.

It is further **ORDERED** that Plaintiff's Motion for Default Judgment (Dkt #53) is hereby **GRANTED**. Plaintiff is entitled to a default judgment against Defendant ABA Ranch, LLC, in the amount of $9,946.88 in unpaid wages, $9,946.88 in liquidated damages, and $668.30 in expenses, plus post-judgment interest at the current prescribed federal rate from the date of entry of this default judgment until paid in full. 28 U.S.C. § 1961 (2017). To determine the amount of attorneys' fees awarded to Plaintiff, the Court **ORDERS** Plaintiff to submit to the Court within seven (7) days of this Order documentation that indicates the hours and billing records of time spent on each task.

**SIGNED this 2nd day of August, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE